## SMITH v. STATE.

Decided February 28, 1891.

*Intoxicating liquors—Original packages.*

Under the rule established by the Supreme Court of the United States, one who imports whisky from another State may sell it in the form and shape in which it was imported without impediment from the State license laws; but when the package is broken and its contents distributed, the import becomes a part of the common mass of property of the State and subject to its regulations.

APPEAL from *Woodruff* Circuit Court.

M. T. SANDERS, Judge.

*N. W. Norton* for appellant.·

The right of appellee, under the Federal constitution, to import *and sell* goods cannot be practically destroyed by a requirement that he shall sell them without unpacking. One who imports liquor from another State has a right to sell same whether he has a license or not, and without reference to the package, original or not. 10 S. C. Rep. Reporter, 681; 5 How., 504; 42 Fed. Rep., 546; 12 Wheat. 419. An imported article only passes beyond the control of Congress and becomes subject to State laws :

1. When it ceases to be an article of commerce—as where the importer procures it for his own use.

2. Where the importer disposes of it.

3. Where he has converted it into something else by manufacture. And it is not subject to State laws, until sold by the importer, if he keeps it for sale in the course of trade, *i. e.*, if it is an article of commerce in his hands. He may break and sell in packages, but he cannot keep a saloon or dram shop. Cases *supra*, and 37 Ark., 356; 91 U. S., 275; 102 *id.*, 123. No significance can be allowed to attach to the package. Art. 6, const. U. S.; art 1, sec. 8.

*W. E. Atkinson*, Attorney General, for appellee.

The Supreme Court of the United States only goes to this extent: the right of an importer to sell continues so long as the article remained an " unbroken package," or in the shape in which it was prepared for shipment. So long as it remains in this state, it retains its character as an import, and is not the subject of State laws. But as soon as the package is sold or broken or otherwise affected, congressional protection ceases, and it becomes subject to State regulation. 9 Wheat., 1; 12 *id.*, 419; 135 U. S., 100; 125 *id.*, 506; 135 *id.*, 161; 114 *id.*, 622; 43 Fed. Rep., 762; 5 How., 504. The boxes, and not the bottles, are the " original pacakages." 43 Fed. Rep., 372.

COCKRILL, C. J. This is an appeal from a judgment convicting appellant for a sale of whisky without a license. The whisky was the property of a citizen of the State of Tennessee, and was sold by the defendant as his agent. Neither the principal nor agent had license to sell. The liquor was received by the Arkansas agent from his Tennessee principal in packages containing several dozen quart bottles each. Some of the packages were boxes without tops, from which the bottles could be removed without breaking the box; others comprised closed boxes, and had to be broken open before the bottles could be removed. The appellant removed the bottles from some of the boxes, placed them upon shelves in a store-house, and entered upon the sale of liquor by the quart—that is, in the original bottles. There was testimony tending to show that he sold

bottles from the closed as well as the unclosed boxes, and the appellant has set up no claim that there was any legal distinction to be drawn from the sale of bottles taken from the one or the other.   His position upon the legal aspect of the cause is that the protection afforded the importer by the constitution of the United States against interference by the State authorities would be practically destroyed by a require-ment that he should sell the imported articles without un--packing them, and that such a restriction cannot be placed upon his right to sell.

"Original packages" de-fined.

The rule established by the Supreme Court of the United States in such cases goes no further than this: the importer may sell the article imported in the form and shape in which it was imported without impediment from State laws.

The State's undeniable right to tax and regulate can be interfered with only in so far as the prohibition of the con--stitution of the United States necessarily applies, and that requirement is satisfied when the importer is afforded a fair-opportunity to sell his import in the case or package in which it is imported at the place ·where the transportation. terminates.   When he breaks the package and distributes the contents, he has so acted upon the import as to make it. a part of the common mass of property of the State into which it is imported, and it becomes subject to the unim-peded control of the State.

These conclusions are deducible from the language of Chief Justice Marshall and of the other judges who delivered the opinions of the Supreme Court of the United States in the earliest cases upon the question, and they have been uni-formly accepted as the settled law by the Federal and State-tribunals.   *Low* v. *Austin*, 13 Wall., 29; *Leisy* v. *Hardin*, 135 U. S., 100; In re *Harmon*, 43 Fed. R., 372; *Wynne* v.. *Wright*, 1 Dev. & Bat. (N. C.), 19; *King* v. *McEvoy*, 4 Allen (Mass)., 110.

The appellant cites us to the language of the opinion in *Leisy* v. *Hardin*, *supra*, wherein it is said that by the act of sale alone the liquor would become mingled with the com--

mon mass of property within the State, and relies upon it as sustaining his position (135 U. S., p. 124). But it must be borne in mind that the language is used in reference to the sale of an original package only; and when confined to its proper connection, it can mean no more than that the property would not become amalgamated with the common mass except by sale, if left in the original package. But even that might be shown to exclude some considerations which may enter into the determination of the question as to when the impress of the import ceases and the State's right of control begins.

The charge was right, the evidence sustains the verdict, and there is no other question presented by the record.

Affirm.